**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RUSHI LIAO,<br><br>          Plaintiff,<br><br>          v.<br><br>SCHEDULE A DEFENDANTS,<br><br>          Defendants. | Civil Action No.: 2:26-cv-01590<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Rushi Liao ("Plaintiff"), by and through his undersigned counsel, hereby files this Complaint against the Schedule A Defendants identified on Schedule "A" hereto (collectively, "Defendants"). Plaintiff files this action to combat online infringers who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale unauthorized, unlicensed, counterfeit, and infringing versions of Plaintiff's federally registered trademark used in connection with his wall art, posters, and decorative paintings (the "Infringing Products"). Defendants have offered for sale, sold, and distributed the Infringing Products within this district and throughout the United States by operating e-commerce stores using their respective Store Names and Seller Names set forth on Schedule "A" hereto (collectively, the "Seller Aliases"). As set forth below, Defendants, without authorization, are using Plaintiff's federally registered trademark "SKLSKL", U.S. Trademark Reg. No. 6,774,707 (the "Trademark-in-Suit"), by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, offering for sale and/or selling products bearing

1

unlicensed and infringing versions of the Trademark-in-Suit. Additionally, Defendants are also liable for contributory infringement as they knowingly induce, cause, or materially contribute to the infringing conduct of others by providing means and platforms for the sale and distribution of Infringing Products. Plaintiff is forced to file this action to combat Defendants' infringement of the Trademark-in-Suit, as well as to protect unknowing consumers from purchasing the Infringing Products over the Internet. Plaintiff has been and continues to be irreparably harmed by Defendants' infringement of the Trademark-in-Suit; therefore, Plaintiff seeks injunctive relief to halt such infringement and irreparable harm. Plaintiff also seeks monetary relief for the injury he has sustained and is sustaining. In support thereof, Plaintiff states as follows:

## NATURE OF THE ACTION

1. Plaintiff has spent a considerable amount of time and resources researching, developing, and establishing his SKLSKL-branded products. Plaintiff sells and will continue to sell his products, which generate substantial revenue, via various channels including authorized distributors and major online marketplaces throughout the United States, including within this District.

2. Plaintiff is the owner of the federally registered trademark "SKLSKL" for use in connection with framed paintings, oil paintings, watercolour paintings, engravings, and pictures in the nature of drawings, in International Class 16. Plaintiff has invested heavily in developing and promoting the SKLSKL brand and

the Trademark-in-Suit, which are used to distinguish genuine Plaintiff products from those of competitors and imitators.

3.      Plaintiff is the owner of, and has standing to enforce, the Trademark-in-Suit, U.S. Trademark Reg. No. 6,774,707. The Trademark-in-Suit is valid, subsisting, and in full force and effect, and covers framed paintings, oil paintings, watercolour paintings, engravings, and pictures in the nature of drawings, in International Class 16. The mark is shown below:

| Trademark |
|-----------|
| SKLSKL |
| SKLSKL |

4.      A true and correct copy of the registration certificate for the Trademark-in-Suit asserted herein is attached as Exhibit A.

5.      After investigating marketplace conditions and monitoring online sales channels, Plaintiff discovered that Defendants use counterfeit and/or confusingly similar reproductions of the Trademark-in-Suit on at least their respective product pages, seller pages, advertisements, and/or the products themselves. For example, Defendants' listings display the "SKLSKL" mark, and/or marks substantially indistinguishable therefrom, in their product titles and listing images and superimposed on the face of the goods, in connection with posters, canvas wall art, and decorative paintings that are identical or substantially indistinguishable from the goods for which the Trademark-in-Suit is registered, to mislead consumers into

believing that the products are genuine SKLSKL products, despite having no license or authorization to use the Trademark-in-Suit. See Exhibit B.

6. On information and belief, Defendants have cooperated, communicated, shared information, and coordinated their efforts in order to create a marketplace operating in parallel to the legitimate marketplace of Plaintiff and third parties authorized to sell products using the Trademark-in-Suit, including: employing and benefitting from substantially similar paid advertising, marketing, and advertising strategies (*e.g.,* search engine optimization or "SEO"), in order to make their online storefronts appear more relevant and target a consumer searching for Plaintiff's products. By their action, in addition to the damages associated with unauthorized use of the Trademark-in-Suit, Defendants are causing concurrent and irreparable harm to Plaintiff and the consuming public by (1) reducing the online visibility of Plaintiff's products, (2) diluting and eroding the retail market price for Plaintiff's products, (3) causing overall degradation of the value of goodwill associated with Plaintiff's products, (4) devaluing the exclusivity that enhances the worth of Plaintiff's products and reputation, and (5) increasing Plaintiff's overall cost to market its goods and educate consumers about Plaintiff's products.

7. Further, Defendants, on information and belief, are interrelated group of infringers working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Infringing Products. Moreover, Defendants use aliases to avoid liability by going to great lengths to conceal both their identities as well as the full scope and interworking of their illegal piracy network.

4

8.      Plaintiff files this action to combat online infringers who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale unauthorized, unlicensed, and infringing items bearing and utilizing the Trademark-in-Suit. Plaintiff has been and continues to be irreparably harmed by Defendants' infringement and, therefore, Plaintiff seeks injunctive relief to halt such infringement and irreparable harm. Plaintiff also seeks monetary relief for this sustained injury.

9.      Plaintiff therefore brings this action for federal trademark infringement and false designation of origin pursuant to 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a), and for related relief under 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331.

## JURISDICTION AND VENUE

10.      This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because the claims in this action arise under the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., and related federal law.

### Personal Jurisdiction

11.      Federal courts may "assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *D'Jamoos v. Pilatus Aircraft*, 566 F.3d 94, 102 (3d Cir. 2009) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F. 2d 434, 436 (3rd Cir. 1987)). This Court may exercise personal jurisdiction over a non-resident of the State in which the Court sits to the extent authorized by the state's laws. Fed. R. Civ. P. 4(e). Pennsylvania authorizes personal jurisdiction over each Defendant pursuant to 42 Pa. Cons. Stat. § 5322(a) which provides in pertinent part: "A tribunal of this Commonwealth may

exercise personal jurisdiction over a person ... as to a cause of action or other matter arising from such person: (1) Transacting any business in this Commonwealth. Without excluding other acts which may constitute transacting business for the purpose of this paragraph: (ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit ... (3) Causing harm or tortious injury by an act or omission in this Commonwealth. (4) Causing harm or tortious injury by an act or omission outside this Commonwealth ... (10) Committing any violation within the jurisdiction of the Commonwealth of any statute, home rule charter, local ordinance or resolution, or rule or regulation promulgated thereunder by any government unit or of any order of court or other government unit." Therefore, Pennsylvania authorizes personal jurisdiction over a defendant who commits even a single tortious act in the Commonwealth for the purpose of thereby realizing pecuniary benefit. 42 Pa. Cons. Stat. § 5322(a). Courts regularly confer personal jurisdiction on a given defendant based on that defendant's operation or use of an interactive website through which products may be purchased and are sold to consumers within the judicial district. See e.g., *Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008); *Malletier v. 2016bagsilouisvuitton.com*, No. 16-61554-CIV-DPG, 2016 U.S. Dist. LEXIS 93072, at *3 (S.D. Fla. July 18, 2016).

12.    Although the Third Circuit has not yet considered specific jurisdiction arguments in the context of an online infringement case, this Court has found guidance on this issue from the rulings of the Seventh Circuit. *Nifty Home Prods. v. Ladynana United States*, No. 22-cv-0994, 2023 U.S. Dist. LEXIS 79743 at *13-14

6

(W.D. Pa. May 5, 2023). Specifically, the Court has applied the Seventh Circuit's rulings to establish personal jurisdiction over China-based infringers that have conducted commerce over the internet, even if those infringers have no presence in the United States. *Id.* at \*15 (citing *NBA Props. v. HANWJH*, 46 F.4th 614 (7th Cir. 2022); *Talisman Designs, LLC v. Dasani, et al.*, No. 20-cv-1084, slip op., p. 2 (W.D. Pa. Oct. 13, 2020)). "[S]ellers on Amazon, Aliexpress, and eBay 'may not avoid personal jurisdiction by this Court on the basis that the Great Wall of China renders the district court without jurisdiction to protect brand owners from counterfeit products like this.'" *Id.* (quoting *Dasani*, No. 20-cv-1084, slip op., p. 2). Foreign counterfeiting defendants are also subject to jurisdiction in this Court, and elsewhere in the United States, under Federal Rule of Civil Procedure 4(k), since they lack sufficient contact to any particular state and have not established which forum would be proper venue to bring suit. *Id.* at \*16 (citing *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico*, 563 F.3d 1285 (Fed. Cir. 2009)).

13.    Alternatively, personal jurisdiction is proper under Fed. R. Civ. P. 4(k) because, upon information and belief, Defendants regularly conduct, transact, and/or solicit business in Pennsylvania and in this judicial district; and/or derive substantial revenue from their business transactions in Pennsylvania and in this judicial district; and/or otherwise avail themselves of the privileges and protections of the laws of the Commonwealth of Pennsylvania such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process; and/or Defendants' illegal infringing actions caused injury to Plaintiff in Pennsylvania and

in this judicial district such that Defendants should reasonably expect such actions to have consequences in Pennsylvania and in this judicial district.

14.     Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the United States, including Pennsylvania, through online platforms and storefronts, via online marketplace websites such as Temu (the "Third Party Platforms"), under the Seller Aliases, as well as any and all as yet undiscovered accounts with online storefronts held by or associated with Defendants, their respective officers, employees, agents, servants, and all persons in active concert or participation with any of them, through which consumers in the United States, including Pennsylvania, can view one or more of Defendants' online storefronts that each Defendant operates, use those storefronts to communicate with Defendants regarding their listings for Infringing Products, and place orders for, receive invoices for, and purchase Infringing Products for delivery in the U.S., including Pennsylvania, as a means for establishing regular business with the U.S., including Pennsylvania.

15.     Upon information and belief, Defendants are sophisticated sellers, operating one or more commercial businesses using their respective storefronts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them, operate storefronts to manufacture, import, export, advertise, market, promote, distribute, offer for sale and/or otherwise deal in products, including the Infringing Products, in wholesale

quantities at significantly below-market prices to consumers worldwide, including to those in the U.S., and specifically Pennsylvania.

16. Upon information and belief, Defendants' online storefronts reflect multiple sales to consumers all over the world, including repeat sales to consumers in the U.S. and into this judicial district.

17. Upon information and belief, all Defendants accept payment in U.S. Dollars, collect and pay Pennsylvania sales tax, and offer shipping to the U.S., including to Pennsylvania.

18. Defendants have transacted business with consumers located in the U.S., including Pennsylvania, for the sale and shipment of the Infringing Products.

19. Plaintiff also markets and offers for sale his genuine products to consumers in the U.S., including Pennsylvania, through authorized distributors and third parties via the Internet.

20. Upon information and belief, Defendants are deliberately employing and benefiting from coordinated paid advertising and marketing strategies in order to make their storefronts selling illegal goods appear more relevant and attractive to search result software across an array of queries. By their actions, Defendants are causing concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff of his right to fairly compete for space within the various on-line marketplace search results and reducing the visibility of genuine Plaintiff products on various on-line marketplaces and/or diluting and driving down the retail market price; (ii) causing an overall degradation of the value of the goodwill associated with

9

the Trademark-in-Suit; and (iii) increasing Plaintiff's overall cost to market his goods and educate consumers about his brand and products.

21.　Defendants are concurrently targeting their infringing activities toward consumers and causing harm in Pennsylvania.

22.　Upon information and belief, many Defendants reside and/or operate in and/or purchase the illegal goods from foreign jurisdictions with lax or nonexistent intellectual property enforcement systems.

23.　Upon information and belief, Defendants are aware of Plaintiff's products and are aware that their illegal infringing actions alleged herein are likely to cause injury to Plaintiff in the United States, in Pennsylvania and in this judicial district specifically, as Plaintiff conducts substantial business in Pennsylvania.

**Venue**

24.　Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), which authorizes a civil action to be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. "In making a determination as to whether venue is proper under §1391(b)(2), '[t]he test . . . is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim'[.]'" *Kneuven v. Lysten, LLC*, Civil Action No. 2:23-cv-00368, 2023 U.S. Dist. LEXIS 187157 at *6 (W.D. Pa. Oct. 17, 2023) (quoting *Bockman v. First Am. Marketing Corp.*, 459 F. App'x 157, 161 (3d Cir. 2012)). Section 1391(b)(2) does not require a court to determine the best forum, or the forum with the most substantial events. *Murphy v. Humbolt Clothing Co.*, Civil Action No.

1:20-cv-58-SPB, 2021 U.S. Dist. LEXIS 17072 at *21 (W.D. Pa. Jan. 29, 2021). "In fact, venue may be proper in more than one district. It is necessary 'only that a substantial part of the events occurred [in the forum where suit is brought].'" *Id.* (quoting *Stursberg v. Morrison Sund, Pllc*, No. CV 20-1635-KSM, 2020 U.S. Dist. LEXIS 233042, 2020 WL 7319546, at *16 (E.D. Pa. Dec. 11, 2020)). Further, as stated above, both Plaintiff and Defendants conduct substantial business in Pennsylvania.

25.    Here, Plaintiff's infringement investigation centered not only on the sale of products bearing the Trademark-in-Suit, but also on the states in which Defendants were selling the Infringing Products, including Pennsylvania. Therefore, a substantial part of the events giving rise to Plaintiff's claims occurred within this forum. As discussed above and shown in Plaintiff's evidence attached as Exhibit B, each of the Defendants offers for sale products infringing upon the Trademark-in-Suit to consumers in this forum. Select screenshots of Plaintiff's evidence demonstrate that Defendants were and are offering for sale and/or selling Infringing Products in this forum. This exemplary evidence is included in the table below:

| Seller ID and Doe # | Evidence |
| --- | --- |

11



26.     Each Defendant's offer for sale within the forum is a substantial part of Plaintiff's claims and establishes a proper venue in this district under 28 U.S.C. § 1391(b)(2). Defendants are not prejudiced by Plaintiff's selection of venue, as they may have the right to file a motion, after receiving notice of the case, contesting venue and explaining why the case should be dismissed or transferred.

27.     Venue in this district is further justified by 28 U.S.C. § 1391(b)(3) and 28 U.S.C. § 1391(c)(3). Section 1391(b)(3) states that "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action" is an appropriate venue. As discussed herein, Defendants are subject to personal jurisdiction before this Court arising from their tortious acts within the forum. Additionally, Defendants are foreign entities who do not reside in any other United States judicial district, as provided for in Section 1391(b)(3). This means that

12

if the Court rejects Plaintiff's claims of substantiality, venue is not otherwise provided for under Section 1391(b) and is appropriate here as this Court has personal jurisdiction over Defendants. Similarly, Section 1391(c)(3) states that non-resident defendants may be sued in any judicial district. Even if the Court finds that personal jurisdiction is lacking, venue is still proper under statute.

28.    Accordingly, venue is proper before this Court either because a substantial part of events giving rise to Plaintiff's claims occurred in this district, or else because Defendants do not reside in any State and are subject to this Court's exercise of personal jurisdiction, or else because Defendants are nonresidents of the United States.

29.    For the reasons stated above, venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants. In short, each of the Defendants is committing tortious acts in Pennsylvania via offering for sale and/or sale of their infringing goods through their online marketplaces, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Pennsylvania.

## THE PARTIES

### Plaintiff

30.    Plaintiff is an individual residing in Fujian, China. Plaintiff is a designer and entrepreneur whose main business is designing, marketing, and selling wall art, posters, canvas prints, and decorative paintings under the SKLSKL brand. Plaintiff is the owner of the Trademark-in-Suit, registered with the United States

13

Patent and Trademark Office and asserted in this action. A true and correct copy of the registration certificate for the Trademark-in-Suit is attached as Exhibit A.

31.     Plaintiff's registration for the Trademark-in-Suit is valid and enforceable.

32.     The Trademark-in-Suit is distinctive when applied to Plaintiff's products, demonstrating to the purchaser that the products come from Plaintiff and are manufactured to Plaintiff's quality standards.

33.     The Trademark-in-Suit has been continuously used in commerce by Plaintiff since at least 2021 and has never been abandoned.

34.     Plaintiff has expended substantial time, money, and other resources in developing, advertising, and promoting the Trademark-in-Suit and products bearing the Trademark-in-Suit.

35.     Plaintiff manufactures and sells products through his own online webstores and licenses or authorizes a limited number of distributors and retailers to sell products bearing the Trademark-in-Suit online and in brick-and-mortar locations (collectively, the "Plaintiff's Products"). The presence of the Trademark-in-Suit increases the value of Plaintiff's Products by increasing brand awareness and consumer confidence.

36.     The Trademark-in-Suit is intended to be used by Plaintiff to, among other things, market and advertise Plaintiff's products, representing significant commercial value in the marketplace with the potential to generate substantial sales.

14

37.    Among the rights granted to Plaintiff under the Lanham Act and common law are the exclusive rights to use the Trademark-in-Suit in commerce in connection with Plaintiff's products and to prevent others from using confusingly similar marks in a manner likely to cause consumer confusion or dilution.

38.    Plaintiff is widely advertising and promoting genuine goods bearing the Trademark-in-Suit via the Internet. Third Party Platforms have become increasingly important to Plaintiff's overall marketing. Thus, Plaintiff has been expending significant monetary resources on Internet marketing, including search engine optimization ("SEO") strategies. Those strategies allow Plaintiff to educate consumers fairly and legitimately about the value associated with genuine Plaintiff's Products. Similarly, Defendants' individual Seller Aliases are indexed on the Third Party Platforms and compete directly with Plaintiff for space in the search results, resulting in a flooding of the market with Infringing Products and irreparably harming Plaintiff and his business.

**The Defendants**

39.    Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China and other foreign jurisdictions, as identified on Schedule A. Defendants conduct business or assist in business conducted throughout the United States (including within the Commonwealth of Pennsylvania and this judicial district) through the manufacturing, online advertising and offering for sale, and importation and distribution of products that incorporate counterfeit and infringing reproductions of the Trademark-in-Suit, by

operating e-commerce stores using their respective Store Names and Seller IDs set forth on Schedule "A" hereto (collectively, the "Seller Aliases").

40.    Upon information and belief, Defendants are an interrelated group of counterfeiters and infringers, who create numerous Seller Aliases and design these stores to appear to be selling genuine versions of Plaintiff's Products, while they are actually selling inferior imitations of Plaintiff's Products.

41.    The Seller Aliases share unique identifiers with common design elements, such as the same or related products offered for sale, identical product descriptions or product titles, the same or substantially similar shopping cart platforms, accepted payment methods, check-out methods, lack of contact information, identically or similarly priced Infringing Products and volume sales discounts.

42.    These similar elements between Seller Aliases establish a logical relationship between them and suggest that Defendants' illegal operations arise out of the same transaction or occurrence.

43.    Defendants attempt to avoid and mitigate liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation, including changing the names of their stores multiple times, opening new stores, helping their friends open stores, and making subtle changes to their products. Further, many of the platforms used by Defendants, including Temu and others, do not properly verify or confirm names or addresses used by operators of

16

the stores, which allows counterfeiters to open as many stores as they can using any number of names.

44.    The tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it extremely difficult for Plaintiff to learn the precise scope and the exact interworking of their counterfeit network.

45.    In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## DEFENDANTS' UNLAWFUL CONDUCT

46.    Plaintiff's business success has resulted in significant counterfeiting and other infringement of the Trademark-in-Suit. Consequently, Plaintiff monitors online marketplaces and investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers.

47.    Plaintiff has identified many fully interactive e-commerce stores, including the Seller Aliases, offering for sale, and/or selling Infringing Products to consumers in this judicial district and throughout the United States on platforms such as Temu and others.

48.    Defendants operate at least the Seller Aliases identified in Schedule A and engage in counterfeit use of the Trademark-in-Suit, including offering for sale and selling Infringing Products, which is causing irreparable harm to Plaintiff's business.

49.    Defendants' sale, distribution, and advertising of Infringing Products are highly likely to cause consumers to believe that Defendants are offering and selling authorized Plaintiff's Products when in fact they are not.

50.    Screenshot evidence showing each Seller ID on Schedule A selling Infringing Products is attached as Exhibit B. Exhibit B shows that the infringing marks used by Defendants use identical or confusingly similar elements to the Trademark-in-Suit, illustrating the potential for consumer confusion between the genuine and counterfeit products.

51.    A 2024 U.S. Customs and Border Protection report on seizure statistics indicated that the vast majority of Intellectual Property Rights (IPR) seizures continue to take place within the express consignment and mail shipping methods and in 2024, 97% of IPR seizures in the cargo environment occurred in the de minimis shipments. U.S. Customs and Border Protection, Intellectual Property Rights Seizure Statistics FY 2024 at 2. (See U.S. Customs & Border Protection, FY 2024 IPR Seizure Statistics, (Jan. 16, 2025), https://www.cbp.gov/document/annual-report/fy-2024-ipr-seizure-statistics). Internet websites like the Seller Aliases are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year. (See *Combating Trafficking in Counterfeit and Pirated Goods*, (https://www.dhs.gov/publication/combating-trafficking-counterfeit-and-pirated-goods), Jan. 24, 2020, at 8; Exhibit D).

52.    E-commerce retail platforms such as those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities,

allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." See Exhibit C, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020).

**The Scope of Defendants' Infringing Activities**

53. Upon information and belief, each Defendant operates more than one merchant storefront.

54. Upon information and belief, each Defendant operates merchant storefronts across multiple e-commerce marketplaces.

**JOINDER OF DEFENDANTS**

55. As stated above, on information and belief, Defendants often operate under multiple fictitious aliases, and unauthorized on-line retailers such as the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other identifying information and likewise omit other seller aliases that they use.

56. Further, such unauthorized retailers include other notable common features on their internet stores such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, similarities in price and quantities, and/or the use of the same text and stock images or artificially produced images.

57. The Infringing Products offered for sale by unauthorized retailers such as the Seller Aliases often bear irregularities and indicia of being unauthorized that

are similar to one another, suggesting that the Infringing Products were manufactured by and come from a common source and that these unauthorized retailers are interrelated.

58. On information and belief, groups of infringers such as Defendants here are typically in communication with each other. They regularly participate in WeChat chat rooms, and communicate through websites such as sellerdefense.cn and kuajingvs.com, where they discuss tactics for operating multiple accounts, evading detection, pending litigation, and new lawsuits.

59. Infringers such as Defendants commonly operate under multiple seller aliases and payment accounts so that they can continue operation despite enforcement efforts. Analysis of financial account transaction logs from previous similar cases indicates that offshore infringers regularly move funds from U.S.-based financial accounts to offshore accounts outside the jurisdiction of the U.S. and this Court.

60. Further analysis of similar cases shows that defendants often sweep their accounts in case their infringing activities are detected, and their accounts are frozen, at which time defendants may settle for lesser amounts to regain access to the remaining funds or abandon their stores altogether and start fresh with a new alias.

61. Here, on information and belief, Defendants maintain offshore bank accounts and regularly move funds from their financial accounts that are associated with the activity complained of herein to such offshore accounts based outside of the jurisdiction of this Court.

62. On information and belief, Defendants undertake such activity in an attempt to avoid payment of any monetary judgment awarded based on their infringement of intellectual property rights. Upon information and belief, Defendants are an interrelated group of infringers, who create numerous Seller Aliases and design these stores to appear to be selling genuine versions of Plaintiff's Products, while they are actually selling inferior, unauthorized imitations of Plaintiff's Products.

63. The Seller Aliases share unique identifiers, such as the following: common design elements, the same or similar counterfeit and infringing products that they offer for sale, similar infringing product descriptions, the same or substantially similar shopping cart platforms, the same accepted payment methods, the same check-out methods, the same dearth of contact information, and identically or similarly priced counterfeit and infringing products and volume sales discounts. The foregoing similarities establish a logical relationship between them and suggest that Defendants' illegal operations arise out of the same series of transactions or occurrences.

64. These tactics used by Defendants to conceal their identities and the full scope of their infringing operations make it extremely difficult for Plaintiff to learn the precise scope and the exact interworking of their illegal network. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

///

21

## COUNT I

## TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

65.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the paragraphs above.

66.     The Trademark-in-Suit constitutes a distinctive source identifier that is a valid, protectable mark under the Lanham Act. Plaintiff owns the federal registration identified in Exhibit A, which is valid and subsisting.

67.     Plaintiff is the owner of valid and enforceable rights in the Trademark-in-Suit.

68.     Plaintiff's registration for the Trademark-in-Suit is on the Principal Register and constitutes prima facie evidence of the validity of the Trademark-in-Suit, of Plaintiff's ownership thereof, and of Plaintiff's exclusive right to use the mark in commerce in connection with the goods identified in the registration. 15 U.S.C. §§ 1057(b), 1115(a).

69.     Plaintiff's trademark registration preceded the acts of infringement alleged herein and entitles Plaintiff to seek statutory damages, enhanced damages, and attorneys' fees as permitted by the Lanham Act.

70.     Defendants do not have any ownership interest in the Trademark-in-Suit.

71.     Defendants had access to the Trademark-in-Suit via Plaintiff's marketing, online presence, and use of the SKLSKL brand on his products and packaging, and, as evidenced by their sophisticated business operations and the recognition of Plaintiff's brand, had actual or constructive knowledge of Plaintiff's

rights before engaging in the infringing activities described herein, including by virtue of the constructive notice of Plaintiff's claim of ownership provided by federal registration under 15 U.S.C. § 1072.

72. Without authorization from Plaintiff, and without any right under the law, Defendants have, inter alia, willfully used in commerce marks that are identical to, substantially indistinguishable from, or confusingly similar to the Trademark-in-Suit in connection with the advertising, offering for sale, and sale of Infringing Products through the Seller Aliases.

73. Defendants' Infringing Products bear marks that are virtually identical to and/or are indistinguishably similar to the Trademark-in-Suit.

74. Defendants have, therefore, individually, as well as jointly and severally, infringed and continue to infringe the Trademark-in-Suit in violation of 15 U.S.C. § 1114. Defendants' use in commerce of spurious marks that are identical with, or substantially indistinguishable from, the registered Trademark-in-Suit in connection with the same types of goods for which the mark is registered constitutes use of counterfeit marks under 15 U.S.C. § 1116(d) and 15 U.S.C. § 1117(b)–(c).

75. Defendants reap the benefits of their unauthorized use of the Trademark-in-Suit through their receipt of substantial revenue, including substantial profit, driven by high volume sales of their Infringing Products.

76. Defendants have unlawfully appropriated Plaintiff's protectable goodwill and brand value by using the Trademark-in-Suit on Infringing Products without Plaintiff's permission.

23

77.     Defendants' infringement has been willful, intentional, malicious, and purposeful, and in disregard of, and with indifference to, Plaintiff's rights. Given the recognition of Plaintiff's brand and the nature of Defendants' business operations, Defendants' infringement has been willful and with knowledge of Plaintiff's rights.

78.     Defendants, by their actions, have caused financial injury to Plaintiff in an amount to be determined at trial.

79.     Defendants' conduct is causing, and unless enjoined and restrained by this Court will continue to cause, Plaintiff irreparable injury that cannot fully be compensated for or measured monetarily. Plaintiff has no adequate remedy at law for such injury.

80.     Considering the foregoing, and as contemplated by 15 U.S.C. §§ 1116 and 1117, Plaintiff seeks injunctive relief prohibiting further infringement of the Trademark-in-Suit by Defendants.

## COUNT II

### FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

81.     Plaintiff re-alleges and incorporates by reference herein the allegations set forth in the preceding paragraphs.

82.     Plaintiff is the owner of the Trademark-in-Suit. Plaintiff has used the Trademark-in-Suit in interstate commerce in connection with his products long prior to Defendants' acts complained of herein, and the Trademark-in-Suit identifies Plaintiff as the sole source of genuine Plaintiff's Products.

83. Upon information and belief, Defendants have knowledge of Plaintiff's rights in the Trademark-in-Suit and are willfully using confusingly similar designations in commerce to misrepresent the source, sponsorship, or affiliation of the Infringing Products.

84. Defendants' willful, intentional and unauthorized use of the Trademark-in-Suit is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Infringing Products among the general public.

85. Defendants are using marks or symbols in commerce that are likely to cause confusion, or to cause mistake, or to deceive, and are likely to cause purchasers and potential purchasers to falsely believe that Defendants' goods are sponsored by, approved by, or affiliated with Plaintiff, or that Plaintiff's goods are sponsored by, approved by, or affiliated with Defendants.

86. Defendants are using in commerce marks that are identical to, substantially indistinguishable from, colorable imitations of, or confusingly similar to the Trademark-in-Suit, and the unauthorized use of such designations by Defendants in commerce is likely to cause damage and other irreparable injury to Plaintiff unless such use is enjoined by this Court, Plaintiff having no adequate remedy at law.

87. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are currently still selling, offering to sell, marketing, distributing, and advertising products using confusingly similar reproductions of the Trademark-in-Suit without Plaintiff's permission.

25

88. Defendants' use in commerce of such false designations of origin, false or misleading descriptions, and representations of fact that misrepresent the nature, characteristics, qualities, or geographic origin of Defendants' goods constitutes a violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

89. After a reasonable opportunity for further investigation and discovery, it is likely the evidence will show that Defendants' aforesaid acts have been and are being committed with knowledge of the Trademark-in-Suit, and that such acts are likely to cause confusion, mistake, or deception. Defendants' acts are therefore intentional, willful, and maliciously calculated to cause confusion, mistake, or deception, making this an exceptional case.

90. In accordance with 15 U.S.C. § 1117, Plaintiff is entitled to recover from Defendants: (1) their profits, (2) any damages sustained by Plaintiff, and (3) the costs of the instant action. Further, based upon the nature of Defendants' violation of Plaintiff's trademark rights and false designation of origin, Plaintiff is entitled to reasonable attorneys' fees, treble damages, and/or enhanced profits.

91. Plaintiff is further entitled to an award of three times his damages or Defendants' profits for those Defendants found to be intentionally using a counterfeit mark, pursuant to 15 U.S.C. § 1117(b).

92. Alternatively, Plaintiff may elect at any time before judgment to recover, instead of actual damages or profits, an award of statutory damages of not less than $1,000 or more than $2,000,000 per counterfeit mark per type of good sold or offered for sale.

93.    Plaintiff has no adequate remedy at law and has been or is likely to be irreparably damaged by Defendants' use of counterfeit and/or infringing marks in the United States and will continue to be irreparably damaged unless such use is immediately and permanently enjoined by this Court. Plaintiff has a likelihood of success on the merits of his claims for infringement and false designation involving the Trademark-in-Suit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.    Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert or participation with them be temporarily, preliminarily, and permanently enjoined and restrained from the following actions:

    (a)    using the Trademark-in-Suit or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Plaintiff's Product or is not authorized by Plaintiff to be sold in connection with the Trademark-in-Suit;

    (b)    passing off, inducing, or enabling others to sell or pass off any product as a genuine Plaintiff's Product or any other product produced by Plaintiff, which is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the Trademark-in-Suit;

(c) committing any acts calculated to cause consumers to believe that Defendants' Infringing Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

(d) manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear the Trademark-in-Suit, including any reproductions, counterfeit copies, or colorable imitations thereof; and

(e) using any false designation of origin or false description or representation that can or is likely to lead the public or individual members thereof to believe that any products manufactured, distributed, sold, or offered for sale by Defendants are in any manner associated or connected with Plaintiff or are licensed, approved, or authorized by Plaintiff;

2. Directing that Defendants deliver for destruction all products not authorized by Plaintiff that include any reproduction, copy, or colorable imitation of the Trademark-in-Suit, pursuant to 15 U.S.C. § 1118;

3. Entering an Order that all banks, savings and loan associations, other financial institutions, payment processors, on-line marketplaces, and other

third parties who are in active concert or participation with Defendants, shall, within two (2) business days of receipt of an Order entered by this Court:

(a)     Locate all accounts connected to Defendants;

(b)     Restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets; and

(c)     Transfer to Plaintiff all funds restrained in such accounts up to the amount of any monetary relief awarded to Plaintiff by this Court within ten (10) business days of receipt of such Order;

(d)     Entering an Order that, until Plaintiff has recovered full payment of monies owed to him by Defendants, in the event that any new financial accounts controlled or operated by Defendants are identified, Plaintiff shall have the ongoing authority to direct any banks, savings and loan associations, other financial institutions, payment processors, and on-line marketplaces, with whom such newly identified accounts are maintained, to carry out the following activity:

(e)     Locate all accounts connected to Defendants;

(f)     Restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets; and

(g)     Transfer any funds restrained in such accounts to Plaintiff within ten (10) business days of receipt of this Order;

4.    Awarding Plaintiff statutory damages based on Defendants' willful trademark infringement, pursuant to 15 U.S.C. § 1117(c)(2), in an amount of not less than $1,000 or more than $2,000,000 per counterfeit mark per type of good sold or offered for sale, per Defendant;

5.    Alternatively, should the Court not award Plaintiff statutory damages, that Defendants be ordered to pay to Plaintiff all actual damages sustained by Plaintiff as a result of Defendants' infringement and false designation of origin, said amount to be determined at trial; and that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' infringement of the Trademark-in-Suit as complained of herein, to the extent not already accounted for in the above-referenced assessment of actual damages;

6.    Awarding Plaintiff his reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a) and other applicable law; and

7.    Awarding Plaintiff any and all other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

///

Date: July 26, 2026                                    Respectfully submitted,

/s/ Zhan Jin

30

Zhan Jin (CA-355793)
***Law Office of Tina Z. Jin***
1769 Hillsdale Ave., Ste 24483
San Jose, CA 95154
Email: tinajin@zjinlaw.com
Tel.: (408) 338-8500

*ATTORNEY FOR PLAINTIFF*